Filed 11/18/25  P. v. West CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C102095 |
| Plaintiff and Respondent, | (Super. Ct. No. 62198468) |
| v. | |
| JASON EDWARD WEST, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Jason Edward West has asked this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Finding no arguable error that would result in a disposition more favorable to him, we will affirm the judgment.

1

BACKGROUND

A complaint deemed an information charged West with possession of a controlled substance for sale (Health & Saf. Code, § 11378) and resisting, obstructing, or delaying a peace officer (Pen. Code, § 148, subd. (a)(1)).[1] The information also alleged a host of aggravating circumstances under section 1170, subdivision (b)(2) as defined in California Rules of Court, rule 4.421. West filed a motion to suppress, and the trial court heard his motion simultaneously with his preliminary hearing.

At the hearing, Roseville Police Detective Steven Foster testified he observed West leaving a house known for drug activity shortly after another man who was being investigated. In the prior six weeks, the officers had investigated the house and had arrested over 10 people on narcotic-related charges arising out of that house. When he first saw West, Detective Foster did not immediately recognize him. As time went on, however, he recognized him as West and knew that he had a history of narcotics violations in Placer County.

Detective Foster observed West with a satchel, a cell phone, and a utility knife. He described the knife as a red folding knife, a Dewalt folding knife, and a sheet rock knife, and testified West openly carried it on his left side. West's satchel was concealed under his shirt but was visible as a prominent bulge.

West walked from the house into the neighboring park. The police department had received a significant number of complaints about drug use in that park, which was well known as a place where people use and sell drugs. The detective testified West ended up in a median in the parking lot where there were some waist-high bushes for 10 to 15 minutes while he was "working" his cell phone.

While Detective Foster did not have any "particularly specific" suspicions at this time other than West had left a known drug house, he called in Roseville Police Officer

---

[1] Undesignated statutory references are to the Penal Code.

George Turkov to investigate further. Officer Turkov's encounter with West was recorded on his bodycam, and the video, still photographs, and the transcript of the encounter were submitted to the trial court. The bodycam footage showed West was not standing in the bushes but was actually standing in the parking lot next to the bushes.

Officer Turkov parked his patrol car about 20 feet away from West and approached him on foot. The lights and the siren of his patrol car were not on, and the officer did not draw his weapon.

Officer Turkov recognized West as soon as he saw his face because he had arrested him three times before: for drug sales, drug possession, and on a felony warrant for drug sales. The specific area West was standing in was an area the officer knew to be a place where people used drugs. When he approached West, Officer Turkov immediately noticed a massive bulge under the front of West's shirt. The bulge caused concern because Detective Foster had told Officer Turkov about the knife (which was no longer visible) and Officer Turkov believed it was "very likely" West had a gun in the concealed satchel. The bulge in the video also had a distinct edge at its top.

Officer Turkov asked West about his prior prison time for a drug arrest. West revealed he had previously been released from jail for drug sales. The officer asked him about the "big bulgey" thing he had under his clothes and West said, "Nothing." Turkov next said, "Okay. Hey, just with all your history and stuff do you mind if I make sure you don't have anything illegal on you, bro?" West responded, "I'm fine. I'm just standing here fucking with my phone." The officer pressed West to search him again mentioning his extensive history with drugs, and West said no and repeated he was just out here "fucking around with my phone."

Officer Turkov asked West if he could remind him of his date of birth. West told him his birthdate and then the officer asked dispatch to run a records check on him. Next, Officer Turkov asked West if he had any weapons on him. West denied having any. The officer again asked, "What's . . . that big bulge sticking out." West said,

3

"Nothing." At this point, the officer told West he would conduct a weapons patdown on him. West said, "It's nothing. Leave me alon[e]," and was uncooperative. He also told the officer he was not on probation or parole. Officer Turkov then told West he was detained and that the officer would conduct a weapons patdown search. West responded he would not allow Officer Turkov to pat him down. The officer grabbed West's arm, and West started to pull away.

Ultimately, Officer Turkov put West in handcuffs. The patdown search revealed West had the knife in his left pocket. The officer halted the search at that time. Meanwhile, dispatch reported West had two active warrants for his arrest. The officer placed West under arrest. In the subsequent search of his satchel, Officer Turkov uncovered four ounces of methamphetamine, a scale, a methamphetamine pipe, a torch that looked like a firearm, and various other drug paraphernalia.

At the conclusion of the hearing, the trial court found West and Officer Turkov had "a history together." The trial court concluded the initial encounter was consensual and the officer would have inevitably discovered the drugs when he found out West had an outstanding warrant. Thus, the trial court denied the motion to suppress and found there was sufficient evidence to hold West to answer.

After the trial court denied the suppression motion, West pled guilty to possession of methamphetamine pursuant to a plea agreement calling for a sentence of two years with the dismissal of the resisting charge.

The trial court sentenced West to the middle term of two years in county jail and dismissed the other charge. The trial court imposed a $300 restitution fine (§ 1202.4), a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373).

West filed a timely notice of appeal as to the denial of his motion to suppress.

4

## DISCUSSION

West's appointed counsel has asked this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d 436.) West was advised by counsel of his right to file a supplemental brief within 30 days from the date the opening brief was filed. We have not received any communication from West. We have undertaken an examination of the record and conclude there is no arguable error that would result in a disposition more favorable to him.

## DISPOSITION

The judgment is affirmed.


_____/s/_____
BOULWARE EURIE, J.



We concur:



_____/s/_____
DUARTE, Acting P. J.



_____/s/_____
KRAUSE, J.